## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **SURJEET BASSI, JASWINDER CHILANA, TAJINDER SINGH, SURJIT SINGH, and DARSHAN SINGH CHILANA,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:23-cv-550** |
| **v.** | : | **(JUDGE MANNION)** |
| **MOUNT AIRY, NO. 1 LLC d/b/a MOUNT AIRY CASINO RESORT,** | : | |
| **Defendant** | : | |

### MEMORANDUM

Before the court is Defendant Mount Airy Casino Resort's motion to dismiss. (Doc. 3). Plaintiffs have brought claims under the Civil Rights Acts of 1964 and 1991 and the Pennsylvania Human Relations Act, based on their alleged exclusion from Defendant's establishment for speaking Punjabi. For the reasons that follow, Defendant's motion will be denied.

### I.    BACKGROUND

At the motion to dismiss stage, the court must "accept all factual allegations as true." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). The Complaint here, (Doc. 1), alleges the following.

Plaintiffs, who are natives of India that reside in the United States, visited Defendant's casino in January 2023. They played blackjack and conversed with one another in Punjabi, their native language. The table host took no issue with their so speaking. Indeed, they had done so on prior visits, and had heard other patrons "speaking in their native languages," such as Spanish or Yiddish. (Doc. 1 ¶11).

Later that afternoon, however, an employee of Defendant told Plaintiffs to stop speaking Punjabi or she would call security to remove them.[1] Plaintiffs objected to this instruction, but the employee repeated it. Plaintiffs then spoke to a manager, who gave the same warning but did not provide a written policy to that effect. Plaintiffs left the casino without security intervention.

The next day, Plaintiff Singh was contacted by a resort hostess, who offered him hospitality. Singh "raised issue with" the group's treatment from

---

[1] The Complaint does not make clear whether this interaction occurred at a blackjack table or elsewhere in the casino. Defendant interprets the Complaint as alleging that the order occurred while Plaintiffs were playing blackjack. (Doc. 3-3 at 8, 10). Plaintiffs' brief in opposition seems to imply that the order did not occur while they were playing blackjack but while they were gambling in another fashion. (Doc. 7 at 3 n.1, 12–13). And in a January 10, 2024 letter to the court, Plaintiffs' counsel represents that "[t]he fulcrum of this case is that my clients were playing Roulette at Mount Airy when … a supervisor instructed them to desist speaking Punjabi, their native language." (Doc. 26 at 1).

- 2 -

the prior day, and the hostess "replied in writing … that [P]laintiffs could not converse in their native language while gambling." (Doc. 1 ¶¶21–22).

Plaintiffs claim that Defendant (1) impaired their right to make and enforce contracts, in violation of 42 U.S.C. §1981; (2) denied them full and equal enjoyment of the services of a public accommodation, in violation of 42 U.S.C. §2000a(a); and (3) in the same manner, violated the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§953–963.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). So a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" does not comply with Rule 8. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

- 3 -

accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

As noted above, the court at this stage accepts the complaint's factual allegations as true. But this tenet "is inapplicable to legal conclusions." *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). And "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The federal pleading standard just described requires that district courts "conduct a two-part analysis." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a

- 4 -

complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler*, 570 F.3d at 210–11 (internal citations and quotations omitted).

## III.   DISCUSSION

### A. Count 1 – 42 U.S.C. §1981

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, and exactions of every kind, and to no other.

42 U.S.C. §1981(a). To "make an enforce contracts," in turn, "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." §1981(b).

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "In order to state a claim under §1981, a plaintiff must allege facts in support of the

following elements: (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts." *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). A §1981 claim also requires causation: "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S.Ct. 1009, 1019 (2020).

There is no dispute that Plaintiffs, who allege that they are Indian, have adequately plead the first element of a §1981 claim. Defendant contends, though, that they have not satisfied the second and third. (Doc. 3-3 at 7).

As to the second element, Plaintiffs allege that although other patrons freely spoke their native languages on Defendant's gambling floors, Plaintiffs were not allowed to speak Punjabi. Ambiguity in the Complaint has yielded mismatched arguments on this score.[2] Defendant reads the Complaint as asserting that Plaintiffs were ordered to stop speaking Punjabi *while playing blackjack*. Plaintiffs, indirectly, deny such an allegation. (Doc. 7 at 3 n.1, 12–

---

[2] See *supra* note 1.

13), and a recent letter from Plaintiff's counsel confirms their contrary view. (Doc. 26 at 1).

Relying on the former reading, Defendant draws a distinction in the Complaint, noting that it situates other native-language-speaking patrons generally "on the resort's gambling floors," (Doc. 1 ¶11), but Plaintiffs specifically at a blackjack table. (Doc. 3-3 at 8). Because Plaintiffs' language-warning occurred at an "in-progress table game," Defendant posits, the gravamen of their Complaint is an "English-only" rule for live table games. And because their allegation regarding other patrons did not relate specifically to live table games, the argument goes, Plaintiffs have not alleged that this rule was applied differently to them based on their race. (Doc. 3-3 at 8).

Even assuming Defendant's reading of the Complaint were correct, Defendant places more weight on this distinction than it can bear. There is no reason at this stage to read Plaintiffs' allegation regarding the "gambling floors" as *excluding* table games.

For purposes of this motion to dismiss, the Complaint must be construed "in the light most favorable" to Plaintiffs. *Bruni*, 824 F.3d at 360. Construed in that light, it does not allege two distinct circumstances (English-only rules at table games and permission to speak one's native language

- 7 -

elsewhere). It alleges that, while other patrons were permitted to speak their native languages when gambling at Defendant's casino, Plaintiffs were not. And their language is averred to be "native to India and widely spoken there." (Doc. 1 ¶9). This language-race link suggests that discrimination based on speaking Punjabi could double as discrimination based on Indian race. The court concludes that these facts together are sufficient to raise an inference that Defendant intentionally discriminated against Plaintiffs based on their Indian race.

Defendant does not make argument regarding the third element, which requires that the discrimination concern an activity enumerated in §1981. As relevant here, §1981 protects the right "make and enforce contracts," which right includes "enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. §1981(a)–(b). Review of Third Circuit precedent convinces the court that Plaintiffs' claim falls within the scope of this provision.

In *Hall v. Pennsylvania State Police*, the plaintiff, an African-American man, "entered the [defendant] bank to transact business." 570 F.2d 86, 88 (3d Cir. 1978). He alleged that state officials had instituted a program in concert with the bank in which "suspicious-looking blacks" would be photographed and the photographs made available to police. *Id.* Regarding

the plaintiff's §1981 claim against the bank, the court first opined that "Section 1981 obligates commercial enterprises to extend the same treatment to contractual customers 'as it enjoyed by white citizens.'" *Id.* at 92 (quoting §1981(a)). The Third Circuit further explained:

> Here, plaintiff asserts that upon entering the premises to transact business, his photograph was taken for the police by bank employees pursuant to a racially based surveillance scheme. He received disparate, and because it was based on race, disparaging treatment for which the record offers no justification.
> This was not an isolated act of an individual employee, but rather the implementation of a policy deliberately adopted by the bank management to offer its services under different terms dependent on race. We hold that an allegation of that nature claiming violation of §1981 should withstand a 12(b)(6) motion to dismiss.

*Hall*, 570 F.2d at 92.[3]

*Brown v. Phillip Morris Inc.* is also instructive. The plaintiffs there, a group of African-Americans, brought a class action against tobacco companies and related organizations. 250 F.3d at 793–94. They alleged that the defendants had targeted African-Americans with advertising to purchase mentholated tobacco products, despite those products' health risks. *Id.* at 794. The district court held that they had failed to state a §1981 claim, 1999

---

[3] *Hall* was decided before the Civil Rights Act of 1991 amended §1981 by adding subsection (b), which defines "make and enforce contracts," and (c), which provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." P.L. 102–166, Nov. 21, 1991, 105 Stat. 1071.

WL 783712, at **6–10 (E.D. Pa. 1999), and the Third Circuit affirmed. 250 F.3d at 796–800.

In concluding that the plaintiffs had not made out a claim "that they [had] been deprived by defendants of the right to contract for, purchase, own or use either menthol or non-menthol cigarettes," the *Brown* court noted that they had not "claim[ed] that defendants have dealt with customers on differing terms on the basis of race" or sold products of differing quality, at different prices, or on different terms to African-Americans than to whites. 250 F.3d at 797–98.

Consistent with this reasoning, claims in our circuit that racial minorities were *not* afforded the same terms of service as whites in would-be contractual relationships have been viewed as involving §1981 protected activity. *See, e.g.*, *Spencer v. Bloomingdale's King of Prussia*, No. 17-3775, 2017 WL 6525797, at *3–4 (E.D. Pa. 2017) (holding that the plaintiff had made out a §1981 claim where he had alleged "numerous instances of discriminatory surveillance" by the defendant retailer, "that certain employees failed to offer him assistance or provided him assistance inferior to that provided to Caucasian customers," and "that on at least one occasion, he was forced to pay a higher price for goods at Bloomingdale's and had to return to the store at a later time to use a coupon that should have been

offered to him in the first instance"); *Bethea v. Michael's Family Restaurant & Diner*, No. 00-6216, 2001 WL 722566, at *3 (E.D. Pa. 2001) (holding that the plaintiffs had plead the third element of a §1981 claim where they alleged that they "received an inferior level of service to that of the white patrons they observed.").

More recently, a group of African-American and Hispanic parents brought a claim against an amusement park under §1981, alleging that during "meet and greet events," several costumed performers "ignored and refused to interact with their children while 'readily engaging with numerous similarly situated white customers and their children.'" *Burns v. SeaWorld Parks & Entertainment*, No. 22-2941, 2023 WL 3821810, at *1, (E.D. Pa. June 5, 2023). The defendant there argued that the plaintiffs had not stated a §1981 claim because they were not contractually entitled to interactions with the characters. *Id.* at *5. The court concluded that the plaintiffs had adequately alleged the impairment of a contractual interest based on their allegations "that the costumed characters repeatedly ignored minority children while engaging with similarly situated White children—*i.e.*, they were denied a benefit of their contract because of racial discrimination, and SeaWorld performs its contracts with its White and Minority patrons on different terms." *Id.* at *6.

- 11 -

There appears to be no dispute that Plaintiffs, as paying customers, have alleged a contractual relationship with Defendant. And like the plaintiffs in *Hall* and *Burns*, Plaintiffs here allege that Defendant discriminatorily interfered with their right to enjoy contractual terms equal to those allegedly enjoyed by other patrons: namely, the right to converse in their native language while gambling. They have thus successfully plead discrimination concerning one of the statute's enumerated activities.

Because Plaintiffs have set out a prima facie case of discrimination under §1981, Defendant's motion to dismiss will be denied as to Count 1.

### B. Count 2 – 42 U.S.C. §2000a

Section 2000a provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. §2000a(a). Places of entertainment whose operations affect interstate commerce are places of public accommodation for purposes of this provision. §2000a(b)(3). A claim under §2000a requires that a plaintiff plead "that he or she (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits

and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class." *Shumate v. Twin Tier Hospitality, LLC*, 665 F. Supp. 2d 521, 537 (M.D. Pa. 2009).

Defendant argues that Plaintiffs have "fail[ed] to plead that they were denied the full benefits and enjoyment of playing live table games or that they suffered disparate treatment with regard to Mount Airy's rules for such games." (Doc. 3-3 at 10). Here again, Defendant focuses on the "gambling floor" versus "live table game" distinction, asserting that "[t]here is no allegation that other patrons were allowed to speak in a language other than English while seated at a live table game." (Id.). As the court explains *supra* Section III.A., Plaintiffs' allegation that other patrons were allowed to speak their languages on the "gambling floors" need not be materially distinguished from their allegation that they were not allowed to speak Punjabi.

In sum: the Complaint alleges that other patrons were, unlike Plaintiffs, permitted to speak their native languages on the gambling floor. Plaintiffs have therefore plead that they were treated less favorably than similarly situated persons who were not Indian. They further allege that they attempted to exercise the right to full benefits and enjoyment of the casino by gambling while conversing in their native language, a right that other, non-Indian patrons were allegedly afforded. And it is alleged that Defendant

- 13 -

denied them this benefit and enjoyment by prohibiting them from speaking their native language while gambling. Plaintiffs have therefore successfully plead a §2000a claim, and Defendant's motion to dismiss Count 2 will be denied.

### C. Count 3 – Pennsylvania Human Relations Act

Like §2000a, the PHRA provides that "[i]t shall be an unlawful discriminatory practice" for a public accommodation, resort, or amusement to "deny to any person because of his race" or "national origin" "any of the accommodations, advantages, facilities or privileges of such public accommodation, resort, or amusement." 43 Pa. Stat. §955(i)(1). This provision has been described as a "state-law analog" to 42 U.S.C. §2000a. *Sayed-Aly v. Tommy Gun, Inc.*, 170 F. Supp. 3d 771, 775 (E.D. Pa. 2016) (citing *Levy v. Trent Motel Assocs., LP*, No. 11-7776, 2011 WL 3803647, at *7 (E.D. Pa. 2011)). And the parties agree that the same standard should govern these two provisions. (Doc. 3-3 at 9 n.2; Doc. 7 at 13).

Because the court concludes that Plaintiffs have stated a claim under 42 U.S.C. §2000a, *see supra* Section III.B, it concludes that they have also stated a claim under the analogous 43 Pa. Stat. §955(i)(1). Defendant's motion to dismiss Count 3 will therefore be denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, (Doc. 3), will be denied. An appropriate order will follow.

**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 7, 2024**
23-550-01