**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **SURJEET BASSI, JASWINDER CHILANA, TAJINDER SINGH, SURJIT SINGH, and DARSHAN SINGH CHILANA,** | : : : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:23-cv-550** |
| **v.** | : | **(JUDGE MANNION)** |
| **MOUNT AIRY, NO. 1. LLC, *d/b/a* MOUNT AIRY CASINO RESORT** | : : | |
| **Defendant** | : : | |

## <u>MEMORANDUM</u>

Plaintiffs Surjeet Bassi, Jaswinder Chilana, Tajinder Singh, Surjit Singh and Darshan Singh Chilana claim that Defendant Mount Airy Casino violated their civil rights when it prohibited them from speaking Punjabi at a gaming table. The parties have conducted discovery, and Defendant moves for summary judgment. (Doc. 31).

## I.    BACKGROUND

### A. Statements of facts

Local Rule 56.1 requires that a motion for summary judgment "be accompanied a separate, short and concise statement of the material facts,

in numbered paragraphs, to which the moving party contends there is no genuine dispute of material fact." The party opposing summary judgment is also required to include "a separate, short, and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement" required of the moving party.

Defendant has filed a 139-paragraph statement of facts with its motion. (Doc. 32). Plaintiffs object that many of the facts contained therein are immaterial, respond only to those paragraphs which they dispute or deem immaterial, and provide their own 111-paragraph counter-statement of material facts. (Doc. 41).  It will be assumed that Plaintiffs admit those facts to which they do not respond. Defendant has responded to Plaintiffs' statement. (Doc. 44).

Again, Local Rule 56.1 requires a "short and concise statement of the material facts." "The purpose of this rule is to 'structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration of the motion." *Hartshorn v. Troop Borough*, No. 3:07-cv-1333, 2009 WL 761270, at *3 (M.D. Pa. Mar. 19, 2009) (quoting *Gantt v. Absolute Machine Tools, Inc.*, No. 1:06-cv-1354, 2007 WL 2908254, at *3 (M.D. Pa. Oct. 4, 2007)). Lengthy statements such as those here—especially given that the claims here relate to a single

incident—run the risk of "hinder[ing], rather than facilitat[ing] the court's direct and accurate consideration" of Defendant's motion. *See Hartshorn*, 2009 WL 761270, at *3.

In addition, Plaintiffs' brief in opposition asserts that numerous specific facts are genuinely disputed without citation to the record (or even to their statement of material facts), as required by Fed. R. Civ. P. 56(c)(1)(A).[1] It is not enough for Plaintiffs simply to "incorporate" their 111-paragraph statement of material facts into their brief, (Doc. 40 at 6), and then reference facts supposedly contained therein without citation to that statement.

Finally, both parties have submitted declarations dated after the close of discovery. (E.g., Doc. 32-1; Doc. 39-3). So the court assumes that they have waived objection to each other's reliance on such declarations.

---

[1] Plaintiffs' counsel, Michael H. Sussman, has previously been cautioned against this approach. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) ("Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment contains no citations to the record, despite making a number of fact-based arguments."); *id.* at 419–21 (collecting cases); *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012) ("It simply will not do for counsel to say that genuine issues of material fact exist and then rely on the court to go find them.").

As the district courts there noted, "the net result of counsel's deficiencies has been to impose on the court and its limited resources the burden of parsing the entirety of the voluminous record … to ensure that his client's claims receive thorough and just consideration." *Risco*, 868 F. Supp. 3d at 86 n.2; *Baity*, 51 F. Supp. 3d at 421.

- 3 -

## B. Factual background

Plaintiffs are New York residents and natives of India who speak Punjabi as their native language. (Doc. 32 ¶¶68–69, 73). Plaintiffs Chilana, Bassi, and Tajinder Singh are fluent in English, while Plaintiff Surjit Singh is not. (Doc. 32 ¶70; Doc. 41 ¶71; Doc. 44 ¶70). They are regular visitors of Defendant Mount Airy Casino Resort's gambling floors. (Doc. 32 ¶¶76–81).

Plaintiffs visited Defendant's casino on January 12, 2023. (Id. ¶¶104–06). They played blackjack together for a few hours, and Chilana, Bassi, Tajinder Singh and Surjit Singh then played Roulette at a table where Wayne Williams was dealer. (Id. ¶¶106, 110–11). They spoke in both Punjabi and English while playing. (Id. ¶113).

The Roulette tables at Defendant's casino have maximum bet limits; for "any way to the number on the inside" bets, the maximum is $100. (Doc. 32 ¶31). Attempting to exceed the Roulette table maximum by bankrolling—that is, sharing the same buy-in among a group of players—is prohibited. (Doc. 33 ¶¶34–35; Doc. 41 ¶35; Doc. 32-3 at 18–19).

Williams and Jennifer Weidner, the floor supervisor covering that Roulette table, observed Plaintiffs pass chips and stack bets totaling over $100. (Doc. 39-21 18–19; Doc. 39-17 at 22). Weidner explained to Mr. Jaswinder that "you are now a combined bankroll and collectively, the three

of you cannot place bets over $100 on a single number." (Doc. 32-9 at 18:9–16). She further explained that patrons are not permitted to speak languages other than English while placing bets at a live table game. (Doc. 32 ¶118).[2] Plaintiffs deny that they were passing chips or sharing a bankroll. (Doc. 32-4 at 33:13–19; Doc. 39-9 ¶6; Doc. 39-11 ¶5).

An argument followed, and Plaintiffs asked to speak with a supervisor. (Doc. 32 ¶¶119–20). Table Games Shift Manager Larry Mueller and Senior Security Shift Manager Alfonso Torres met with Plaintiffs, and Mueller explained to them that patrons are required to speak English while placing bets at live table games. (Doc. 32 ¶¶121–23).  According to Mr. Jaswinder, Mueller said "something like" "if you keep doing that[,] if you keep talking[,] we're going to call security," and Plaintiffs decided to leave Mount Airy. (Doc. 39-4 at 51:8–19).

### C. Procedural background

Plaintiffs filed this complaint in March 2023, bringing claims under 42 U.S.C. §1981 (Count 1); 42 U.S.C. §2000a (Count 2); and the Pennsylvania Human Relations Act. (Count 3). (Doc. 1). Defendant moved to dismiss the complaint, (Doc. 3), and the court denied Defendant's motion. (Doc. 29; Doc.

---

[2] According to Defendant, this rule is part of its obligation to "maintain the integrity of the games at its casino." (Doc. 44 ¶17).

30). Defendant filed the instant motion for summary judgment on March 18, 2024. (Doc. 31).

## II.   LEGAL STANDARD

Before trial, "a party may move for summary judgment, identifying each claim … on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law." *Id.*

Material facts are those that "might affect the outcome of the suit under the governing law," and a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[I]n assessing the genuineness of a potential factual dispute, inferences from the underlying facts should be drawn in favor of the nonmoving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). But summary judgment in favor of the movant is warranted "if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it bears the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986)). "[M]ere allegations" are not sufficient to establish a genuine dispute of material fact. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

The moving party has the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine dispute of material fact.'" *Celotex*, 477 U.S. at 323. If it satisfies this burden, "the opposing party 'must do more than simply show that there is some metaphysical doubt as to material facts.'" *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). At this stage, the court "may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

The court views genuinely disputed facts "in the light most favorable to the non-moving party," here, Plaintiffs, and "must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). But Plaintiffs may not "solely rest upon [their] allegations in the pleadings, rather, they must set forth specific facts such that a reasonable jury could find" in their favor. *Id.* So where certain facts are

genuinely disputed, and Plaintiffs have set out specific evidence of their version, the court will accept that version as true and determine whether Defendant is nevertheless entitled to judgment as a matter of law.

## III.   DISCUSSION

### a.  Count 1 – 42 U.S.C. §1981

Plaintiffs allege that "[b]y refusing to contract with them on the same basis as they do with other patrons and by explicitly discriminating against them on behalf of their race and national origin by demanding they not speak their own language while in the gambling area, defendants violated plaintiffs' right to contract on the same terms as English speakers" in violation of 42 U.S.C. §1981. (Doc. 1 at 5).

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, and exactions of every kind, and to no other.

42 U.S.C. §1981(a). To "make and enforce contracts," in turn, "includes the making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." §1981(b).

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

"[T]o succeed on a claim under §1981, a plaintiff must generally demonstrate '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in §1981, including the right to make and enforce contracts.'" *Schultz v. Wilson*, 304 Fed. App'x 116, 119 (3d Cir. 2008) (non-precedential) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)). A §1981 claim also requires causation: "a plaintiff must initially plead and ultimately prove that, but for race, it would have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

It is well established that, in the employment discrimination context, the *McDonnell Douglas*[3] burden-shifting framework applies to claims brought under §1981. *See Williams v. Tech Mahindra (America) Inc.*, 70 F.4th 646, 651–52 (3d Cir. 2023). Beyond the employment context, the Third Circuit has applied this framework to lending discrimination claims. *Anderson v. Wachovia v. Mortg. Corp.*, 621 F.3d 261, 268 (3d Cir. 2010). And district courts have applied it to other non-employment discrimination claims involving contractual relationships. *See Burns v. SeaWorld Parks & Ent., Inc.*, No. 22-2941, 2024 WL 1660514, at *9 & n.6 (E.D. Pa. Apr. 17, 2024); *Calhoun v. TJM Trevose, LLC*, No. 22-3852, 2023 WL 5208853, at *3 (E.D. Pa. Aug. 14, 2023); *Admiral v. Hilton Scranton Conf. Ctr.*, Nos. 08-286, 08-287, 2010 WL 5300808, *5 (M.D. Pa. 2010). The parties agree that it should apply here. (Doc. 33 at 21; Doc. 40 at 10). In accordance with these decisions and with both parties, the court applies the *McDonnell Douglas* framework in analyzing Plaintiffs' discrimination claim.

Under this framework, "[t]he plaintiff must first establish a prima facie case of discrimination." *Anderson*, 621 F.3d at 270. If the plaintiff does so, "the burden of production shifts to the defendant to offer evidence of a

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1983).

legitimate, nondiscriminatory reason for that action." *Id.* at 271 (internal quotation omitted).

> The defendant satisfies its burden at this step by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable action. The defendant need not even prove that the tendered reason was the actual reason for its behavior.

*Id.* (internal quotations and citations omitted). At the third and final step:

> [T]he burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the defendant's explanation is pretextual. At this stage, a plaintiff may defeat a motion for summary judgment by either discrediting the defendant's proffered reasons or adducing evidence that discrimination was more likely than not a determinative cause of the adverse action.

*Id.*

Defendant first contends that Plaintiffs have not demonstrated an intent to discriminate on the basis of race. (Doc. 33 at 13). Discriminatory intent may be proven "based on the totality of the circumstances." *Stone v. Felsman*, 3:10-442, 2011 WL 5320738, at *4 (M.D. Pa.  Nov. 1, 2011) (quoting *Warren v. Twp. of Derry*, 1:04-cv-2798, 2007 WL 870115, *10 (M.D. Pa. Mar. 20, 2007)). According to Defendant, Plaintiffs have failed to supply evidence that similarly situated non-minority individuals were treated more favorably than they were, or evidence otherwise demonstrating an intent to discriminate. (Doc. 33 at 14–15).

Defendant also submits that, even if Plaintiffs have established a prima facie case of discrimination, they have not satisfied their burden of showing that its legitimate, nondiscriminatory reason for their treatment is pretextual. (Doc. 33 at 21). According to Defendant, that nondiscriminatory reason is "to maintain the integrity of its table games." (Id. at 22). Because Defendant is subject to Pennsylvania Gaming Control Board audit for the integrity of table games and could lose its license based on unsatisfactory audit findings, it argues, maintaining the integrity of tables games "is of paramount importance." (Id. at 22–23). So "[g]iven that attempting to circumvent any table maximum in [Defendant's] casino is considered cheating, and is thus a threat to the integrity of [Defendant's] table games, Ms. Weidner appropriately enforced the English Only rule when she perceived Surjeet Bassi to have placed a bet on top of Jaswinder Chilana's $100 bet." (Id. at 23–24).

In opposition, Plaintiffs object to the English-only policy on the ground that it was not written and irrational, deny that they were cheating, and assert that "there was no non-discriminatory reason for Weidner to chastise [them] for speaking Punjabi at the Roulette table." (Doc. 40 at 11–12, 14–15). But they do not cite evidence creating a genuine dispute of material fact as to intentional discrimination. Indeed, Plaintiffs make only one record citation in

- 12 -

this entire section, (Doc. 40 at 11–17), for the proposition that if a player is exceeding the table limit, the dealer will not pay over the maximum bet. (Id. at 15 (citing Doc. 44-8 at 14)).

Plaintiffs also take issue with Defendant not providing video footage (Defendant has indicated that it only retains surveillance video for seven days (Doc. 44 ¶65)) and for not providing a written English-only policy. (Doc. 40 at 12). But again, they do not submit evidence of, or even connect these averments to, discriminatory intent.

In conclusory fashion (and still without citation), they assert that they "have shown plain evidence of disparate treatment." (Id. at 13, 15). They also make repeated reference to the allegations in their complaint. (Id. at 12 ("The Complaint alleges …"), 13 ("Plaintiffs … plainly allege …")), and, curiously, assert "this Court" has "recognized" that "the record confirms" certain facts. (Id. at 13). At this stage, what the complaint alleges is immaterial. And the court has not yet recognized anything about the record. Neither Plaintiffs' conclusory assertions (without citation) of disparate treatment nor their complaint's allegations suffice to establish a genuine dispute of material fact.

Nonetheless, Plaintiffs' initial burden "is not onerous." *Anderson*, 621 F.3d at 271. They have submitted (though they do not cite it in their brief) testimony that on prior visits they heard patrons speaking foreign languages

at live game tables, (Doc. 32-3 at 47–48; Doc. 32-4 at 45–47; Doc. 32-5 at 19).[4]

The requirement that a plaintiff first establish a prima facie case "eliminates the most common nondiscriminatory reasons for the" defendant's conduct. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 1089, 1094 (1981). "[T]he prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* Again, Plaintiffs have presented evidence that on January 12, 2023, they were not permitted to speak their language while playing live table games, and that on prior occasions, other patrons were permitted to do so. The court concludes that Plaintiffs have thereby established a prima facie case of discrimination.[5]

---

[4] While it is true, as Defendant points out, that they have not presented evidence that other patrons who appeared to be attempting to bet over table maximums were allowed to speak foreign languages, (Doc. 33 at 14; Doc. 32 ¶88), that argument more appropriately pertains to the third step of the *McDonnell Douglas* analysis, for it assumes as a distinguishing circumstance the purportedly nondiscriminatory reason for Defendant's actions.

[5] At the motion to dismiss stage, because Plaintiffs alleged that the Punjabi language is "native to India and widely spoken there," the court stated that "[t]his language-race link suggests that discrimination based on speaking Punjabi could double as discrimination against Plaintiffs based on their Indian race." (Doc. 29 at 8). Defendant does not presently challenge this proposition.

Accordingly, the court proceeds to the second step of the *McDonnell Douglas* framework and observes the following. First, it is undisputed that while playing Roulette on January 12, 2023, Plaintiffs were speaking among themselves in Punjabi. (Doc. 32 ¶113; Doc. 41 (no response to ¶113)). It is also undisputed that exceeding the Roulette table maximum by bankrolling is prohibited. (Doc. 33 ¶¶34–35; Doc. 41 ¶35; Doc. 32-3 at 18–19).

Pit manager Randy Haggerty testified that, at the Roulette table that night, he observed a tall stack of chips controlled by Plaintiff Jaswinder, and that "there were other denominations from other guests on top of it and around it." (Doc. 44-7 at 9). Ms. Weidner testified that she observed two of the Plaintiffs pass chips and then one place a bet on top of the other's maximum bet. (Doc. 32-9 at 18–19). And Mr. Williams testified that he thought Plaintiffs were exceeding the table limit by bankrolling because "[t]he one gentleman was playing black chips," which were worth $100, "and the other gentleman was playing the red chips," which were worth $5, "on top." (Doc. 39-17 at 22). Although Plaintiffs dispute that they were passing chips or bankrolling,[6] nowhere do they dispute that they were placing bets on top

---

[6] Plaintiff Bassi testified that he did not pass chips and he did not see any of the other Plaintiffs pass chips. (Doc. 32-4 at 33:13–19). And Plaintiffs Tajinder Singh and Surjit Singh swear that Plaintiffs were not sharing a bank roll. (Doc. 39-9 ¶6; Doc. 39-11 ¶5).

of (or on the same number as) one another's maximum bets while playing Roulette. (See Doc. 39-3 (Jaswinder Chilana Decl.); Doc. 39-5 (Dashan Singh Decl.); Doc. 39-7 (Surjeet Bassi Decl.); Doc. 39-9 (Tajinder Singh Decl.); Doc. 39-11 (Surjit Singh Decl.)).

In sum, it is undisputed that Plaintiffs were speaking Punjabi while playing Roulette and stacking bets on one another's maximum bets, and that exceeding the Roulette table maximum by bankrolling is prohibited. Considering these circumstances, the court deems Defendant's evidence sufficient to permit the conclusion that there was a nondiscriminatory reason for its enforcement of the English Only rule against Plaintiffs. Because (1) it could have appeared to Ms. Weidner and Mr. Williams that Plaintiffs were attempting to collectively circumvent the table maximum by combining their chips, (2) Defendant has an interest in enforcing its prohibition on patrons circumventing table maximums by bankrolling, and (3) Plaintiffs' conversing in a language not understood by the dealer could have obstructed Defendant's efforts to curb such behavior (by allowing Plaintiffs to verbally coordinate violations undetected), Defendant had a legitimate, nondiscriminatory reason for requiring Plaintiffs to speak English while playing. And these reasons warrant the same conclusion *even if* there was no English Only *policy*. That is, Defendant has presented a legitimate,

nondiscriminatory reason to require Plaintiffs to speak English while betting at a live table game whether there actually was a policy to that effect or not. So the court finds Plaintiffs' suggestion that "there was no non-discriminatory reason" for Defendant's actions unavailing.

As to pretext, Plaintiffs rely primarily on the arguments that there was no English Only policy; that if there was a policy, it was inconsistently applied; and that they were not cheating.[7] (Doc. 40 at 18–20).

First, as discussed *supra*, the court concludes that Defendant has presented a legitimate, nondiscriminatory reason for its conduct even in the absence of a policy.

Second, Plaintiffs' argument that the policy was inconsistently applied ignores the purported reason for Defendant's enforcement of that policy. They merely assert that patrons of other national origins or races were allowed to speak foreign languages on Defendant's gambling floors. (See Doc. 40 at 18–19). But Defendant does not claim that it always enforced the English Only rule; it instead presents evidence that the rule is only enforced "under circumstances when the integrity of the table games is in question."

---

[7] Relatedly, although Plaintiffs "acknowledge that exceeding table maximum is not permitted," (Doc. 41 ¶35), they argue that doing so is not "cheating." (Doc. 40 at 19). This argument is beside the point. Whether this specific behavior is described merely as "not permitted," rather than as "cheating," Defendant had reason to prevent it.

(Doc. 32-1 ¶39). And Plaintiffs have not shown that other patrons who appeared to be attempting to bet over table maximums were allowed to speak foreign languages, (Doc. 33 at 14; Doc. 32 ¶88).

Third, Plaintiffs' testimony that they were not passing cards or bankrolling neither discredits Defendant's proffered reason for requiring them to speak English nor constitutes evidence that discrimination was more likely than not a determinative cause of Defendant's action. Plaintiffs do not dispute that they were placing bets on top of one another's maximum bets while speaking Punjabi, i.e., that were engaging in behavior that at least *could have* aroused a suspicion of rule violation. So this testimony falls short of overcoming Defendant's legitimate, nondiscriminatory reason.

Plaintiffs also attempt to discredit Ms. Weidner's and Mr. Williams's testimony, contending that Williams's testimony "contradict[s] Weidner's testimony that he sought Weidner's intervention." (Doc. 40 at 20 (citing (Doc.44-6 at 6; Doc. 39-17 at 17)). But Weidner's and Williams's testimony is consistent on the most relevant detail: Plaintiffs' gameplay behavior. (See Doc. 32-9 at 18–19; Doc. 39-17 at 22). A plaintiff may withstand summary judgment by discrediting the defendant's proffered reason for its action, *Anderson*, 621 F.3d at 271, but the inconsistency observed by Plaintiffs here

does not strike at Defendant's *reason* for requiring English: because they thought that speaking Punjabi enabled Plaintiffs to violate casino rules.

For these reasons, the court concludes that Plaintiffs have failed to carry their burden at the third step of the *McDonnell Douglas* framework, and thus that Defendant is entitled to summary judgment on Count One.

### b. Count 2 – 42 U.S.C. §2000a

The Complaint claims that "[b]y discriminating against [P]laintiffs on account of their national origin, race and ancestry and thereby denying them the rights to fully participate in public accommodations which it has otherwise provided to others, defendant violated" 42 U.S.C. §2000a. (Doc. 1 at 5).

Section 2000a, part of Title II of the Civil Rights Act of 1964, provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. §2000a(a). Places of entertainment whose operations affect interstate commerce are places of public accommodation for purposes of this provision. §2000a(b)(3). A claim under §2000a requires that a plaintiff show "that he or she (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of

public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class." *Shumate v. Twin Tier Hospitality, LLC*, 655 F. Supp. 2d 521, 537 (M.D. Pa. 2009) (quoting *Slocumb v. Waffle House, Inc.*, 365 F. Supp. 2d 1332, 1342 (N.D. Ga. 2005)).

As §1981 and §2000a "protect similar interests," the inquiry that applies to claims under these statutes is "'substantially similar.'" *Ojo v. Brew Vino*, No. 20-661, 2023 WL 6528849, at *7 (M.D. Pa. Sept. 12, 2023) (quoting *Shumate*, 655 F. Supp. 2d at 537), *report and recommendation adopted*, 2023 WL 6521001 (M.D. Pa. Oct. 5, 2023). That is, both statutes protect against discrimination on the basis of race, color, religion, or national origin.

It follows that, as in the §1981 context, a §2000a plaintiff must demonstrate discriminatory intent.[8]  *See Thomas v. Tops Friendly Markets, Inc.*, No. 96-1579, 1997 WL 627553, at *5 (N.D.N.Y. Oct. 8, 1997).  As the

---

[8] There is some uncertainty about whether claims of disparate impact, which would not require intent, can also be brought under Title II. *See Hardie v. NCAA*, 876 F.3d 312, 319 (9th Cir. 2017) (collecting cases). The court need not decide whether they can be, because Plaintiffs style their claim as one of intentional discrimination. (See Doc. 1 at 5 ("By discriminating against [P]laintiffs ….")). And no showing that the "challenged policy has a 'significantly disparate impact on nonwhites'" has been attempted here. *Hardie*, 879 F.3d at 319. (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 658 (1989)).

standard articulated in *Shumate* recognizes, one practical way to do so is by showing that similarly situated persons outside the plaintiff's protected class were treated more favorably. But that showing cannot be evaluated in a vacuum, for a defendant may have legitimate, nondiscriminatory reasons for its treatment, even if the result is favorable for certain groups. The *McDonnell Douglas* framework accounts for this possibility by allowing a defendant, once a plaintiff has created a presumption of discrimination through its prima facie case, to rebut that presumption by offering evidence of a legitimate, nondiscriminatory reason. The ultimate burden then falls back to the plaintiff to show that the defendant's proffered reason was merely pretextual. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). For the same reasons that this framework appropriately guides the analysis of a §1981 claim, it can be employed in the §2000a context. *See Feacher v. Intercontinental Hotel Grp.*, 563 F. Supp. 2d 389, 402 (N.D.N.Y. 2008); *Benton v. Cousins Props., Inc.*, 230 F. Supp. 2d 1351, 1382 (N.D. Ga. 2002) (citing *Hornick v. Noyes*, 708 F.2d 321, 325 n.8 (7th Cir. 1983)).

Defendant contends that Plaintiffs have not satisfied the third and fourth elements of their §2000a claim. (Doc. 33 at 18; Doc. 43 at 22). According to Defendant, they have not shown that they were denied the full enjoyment and benefits of its establishment because "[t]he full enjoyment of

playing table games at Mount Airy does not include the ability to speak one's native language under circumstances where one's non-verbal actions suggest cheating." (Doc. 33 at 20). And Defendant observes that Plaintiffs "have not … identified other Mount Airy casino players who spoke their native language while betting at a table game and under circumstances where they were perceived to be attempting to exceed table maximums, or otherwise cheat." (Doc. 33 at 21).

Plaintiffs state (without record citation), that the third element is met because "two of [D]efendant's agents explicitly told [P]laintiffs to desist speaking Punjabi or be escorted out by security." (Doc. 40 at 18). As to the fourth element, Plaintiffs assert the "the evidence cited fully vindicates" their complaint's allegations that "other native speakers, including those who spoke English, Spanish, and Yiddish were not so treated, satisfying the disparate treatment element." (Id.). But they do not cite record evidence in this section of their brief. This conclusory assertion is plainly insufficient to overcome Defendant's motion for summary judgment.

In any event, the court need not determine whether Plaintiffs have shown that they were denied the full enjoyment and benefits of Defendant's establishment or that similarly situated persons were treated more favorably. That is because, as discussed *supra* Section III.a, the court concludes that

Plaintiffs have not sustained their ultimate burden of producing evidence that Defendant's legitimate, nondiscriminatory reason for requiring them to speak English while placing bets at the Roulette table was pretextual. They have thus failed to establish the existence of an essential element of their §2000a disparate treatment claim: intentional discrimination. So Defendant is entitled to summary judgment on this claim.

### c. Count 3 – Pennsylvania Human Relations Act

Like §2000a, the PHRA provides that "it shall be an unlawful discriminatory practice" for a public accommodation, resort, or amusement to "deny to any person because of his race" or "national origin" "any of the accommodations, advantages, facilities, or privileges of such public accommodation, resort, or amusement." 43 Pa. Stat. §955(i)(1). The provision has been described as a "state-law" analog to 42 U.S.C. §2000a. *Sayed-Aly v. Tommy Gun, Inc.*, 170 F. Supp. 3d 771, 775 (E.D. Pa. 2016) (citing *Levy v. Trent Motel Assocs., L.P.*, No. 11-7776, 2011 WL 3803647, at *7)). The parties agree that the same standard should govern these two provisions. (Doc. 3-3 at 9 n.2; Doc. 7 at 13; Doc. 33 at 18 n.2; Doc. 40 at 18).

Because it concludes that Defendant is entitled to summary judgment on Plaintiffs' section 2000a claim, and because a PHRA claim is governed

by the same standard, the court concludes that Defendant is entitled to summary judgment on Plaintiffs' PHRA claim also.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted. An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 31, 2024**
23-550-02